IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CAROL BYRD**, | : | |
| | : | Case No. 1:09CV772 |
| Plaintiff | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING |
| **TIME WARNER CABLE**, *et al.* | : | DEFENDANTS' MOTION TO |
| | : | ENFORCE SETTLEMENT |
| Defendants | : | AGREEMENT |

This matter comes before the Court on Defendants' Motion to Enforce Settlement Agreement (Doc. 88). The Court held an evidentiary hearing on the Motion on February 1, 2012. For the reasons stated below, the Court **GRANTS** Defendants' Motion.

**I. BACKGROUND**

Pro se Plaintiff Carol Byrd alleges that Time Warner Cable ("Time Warner"), her former employer, discriminated against her because of her race and disability and retaliated against her for exercising her rights under the Ohio Civil Rights Act and the FMLA. Ms. Byrd worked for Time Warner for 23 years before her termination in November 2007. In her Complaint, Ms. Byrd named as defendants Time Warner and six Time Warner employees: a dispatch supervisor, a dispatcher, a division manager, a division director, the vice president of human resources, and a human resources benefits coordinator.

1

In March 2011, Magistrate Judge Litkovitz asked the parties if they would be willing to participate in a settlement conference, and the parties indicated that they would. Magistrate Judge Litkovitz asked attorney Daniel Donnellon with the law firm of Faruki Ireland & Cox P.L.L. if he would accept a limited appointment to assist Ms. Byrd during the settlement conference. (*See* Doc. 79 ("Order Appointing Pro Bono Counsel in Mediation Proceeding").)[1] Mr. Donnellon, who is a partner at his law firm and has been practicing law for twenty-five years, accepted the appointment.

Ms. Byrd agreed to have Mr. Donnellon represent her in this limited capacity. (See Doc. 78 ("Agreement to Limited Appointment of Attorney for Mediation Assistance").) Mr. Donnellon asked an associate attorney at his office, Steven Weigand, to assist him in the limited appointment to assist Ms. Byrd. (2/01/12 Hrg.) Both attorneys reviewed the pleadings in the case and met in person with Ms. Byrd in advance of the settlement conference. (*Id.*)

The parties engaged in a settlement conference before Magistrate Judge Litkovitz on May 18, 2011. Ms. Byrd was present along with Messrs. Donnellon and Weigand. At the end of nearly eight hours of negotiation, the parties had reached an oral agreement, and Mr. Donnellon informed Magistrate Judge Litkovitz that they had reached a settlement. (*Id.*) Magistrate Judge Litkovitz reviewed the terms of the settlement with Ms. Byrd to make sure she understood, and the Magistrate believed that Ms. Byrd understood and consented to the terms of the agreement, including a mutual release of all claims. (*Id.*)

---

[1] Ms. Byrd's case was the first time Magistrate Judge Litkovitz made use of a program she had designed for the purpose of appointing counsel to assist pro se plaintiffs with mediation. Magistrate Judge Litkovitz created the program because she believed pro se plaintiffs would benefit from having an attorney available to advise them on relevant points of law and to counsel them as to the relative merits or demerits of settlement. (2/01/12 Hrg.)

Mr. Donnellon requested the presence of a court reporter to transcribe the settlement terms on the record. (*Id.*) Time Warner's attorney, Elizabeth Conkin, read the terms into the record with all parties present. (*See* Sealed Conf. Tr. of 5/18/11, Doc. 94 at 2-3.) Mr. Donnellon reiterated on the record that the settlement agreement would involve a mutual release, clarifying that it was a dismissal of "all claims that were or could have been brought." (*Id.* at 6.) According to Mr. Donnellon, Ms. Byrd made the decision to settle the case. (2/01/12 Hrg.) There was nothing to indicate to Mr. Donnellon that Ms. Byrd's acceptance of the settlement was anything other than knowing and voluntary. (*Id.*)

The following day, on May 19, 2011, the Court put on an Order reflecting that the parties had reached a settlement and dismissing the action with prejudice. (Doc. 80.) The Order provided that any of the parties could reopen the action within ninety days if the settlement was not consummated. (*Id.*) Additionally, the Order specified that the Court retained jurisdiction over the settlement contract for the purposes of its enforcement. (*Id.*)

After the settlement conference, counsel for Defendants memorialized the agreement in writing and transmitted a draft to Mr. Donnellon. (2/01/12 Hrg. DX 5.) Mr. Donnellon reviewed the draft and informed defense counsel that two changes needed to be made in order for the draft to accurately reflect the oral settlement agreement: paragraph 2 needed to specify that Time Warner was responsible for the expense to enroll Ms. Byrd in an outplacement service, and paragraph 5 needed to include a non-disparagement clause. Defense counsel made these changes and transmitted a revised draft agreement to Mr. Donnellon. (2/01/12 Hrg. DX 5(A).) Messrs. Donnellon and Weigand believed the revised draft settlement agreement accurately reflected the terms of the oral agreement reached by the parties during the May 18, 2011

3

settlement conference. Accordingly, Mr. Donnellon asked Mr. Weigand to send the revised settlement agreement to Ms. Byrd for her approval.

Ms. Byrd received but did not sign the revised draft agreement. Rather, on June 17, 2011, Ms. Byrd filed with the Court a Motion to Request Review of Oral Agreement, in which she indicated that she wanted to revoke the oral settlement agreement and present evidence to the Court that would substantiate her case. (Doc. 82.)

The parties attended a status conference on August 18, 2011 for the purpose of reviewing the oral agreement reached during the May settlement conference. During the status conference, Ms. Byrd met privately with Magistrate Judge Litkovitz and then with Messrs. Donnellon and Weigand. At the conclusion of that conference, Ms. Byrd told Mr. Donnellon that she would sign the draft agreement if paragraph 4 of the draft agreement, "Mutual Complete and Full General Release of All Claims," was revised to expressly limit the release "only to direct employees, officers, directors of [Time Warner] and . . . not include agents, independent contractors, or persons acting in a representative capacity." (2/1/12 Hrg. DX 7.)

Mr. Donnellon made Ms. Byrd's proposed change in a redline document that he transmitted to defense counsel, Ms. Conkin. (2/1/12 Hrg.) Mr. Donnellon did not intend the proposed change in paragraph 4 to be a material alteration to the terms of the release. (*Id*.) However, Ms. Conkin refused to accept the proposed change. Ms. Byrd would not sign the agreement without inclusion of her proposed language limiting the release to Time Warner employees, officers, and directors. (*Id*.) Given the stalemate, Defendants filed the instant motion to enforce the oral settlement agreement, taking the position that the draft agreement

introduced at the hearing as Defense Exhibit 5(A) embodied the terms of the oral agreement reached in May.

## II. ANALYSIS

The formation and enforceability of a purported settlement agreement are covered by state contract law. *Smith v. ABN AMRO Mort. Group, Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011) (citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). "[C]ourts 'possess the authority to enforce a settlement agreement voluntarily entered into by the parties to a lawsuit since such an agreement constitutes a binding contract.'" *Rieser v. Rieser*, 191 Ohio App. 3d 616, 620-21, 947 N.E.2d 222, 226 (2010) (quoting *Mack v. Polson Rubber Co.* 14 Ohio St.3d 34, 470 N.E.2d 902 (1984)).

### A. Elements of a valid oral settlement agreement

Under Ohio law, "a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and acceptance." *Smith*, 434 F. App'x at 460 (citing *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337, 338 (1997)). Although "it is preferable that a settlement be memorialized in writing, … an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Id.* (citing *Kostelnik v. Helper*, 96 Ohio App. 3d 1, 770 N.E.2d 58, 61 (2002)). "When the parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Id.* (citing *Re/Max Int'l., Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001)). "[A] district court 'has the inherent authority and equitable power to enforce agreements in settlement of litigation before it, even if that agreement has not been reduced to writing.'" *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir.

5

2010) (*quoting Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 76-77 (6th Cir. 1985)); *see also RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement.")

Defendants argue that the parties assented to the terms of their binding oral settlement agreement because Mr. Donnellon explained on the record the intent of the "mutual release" to which the parties agreed: "It's we're dismissing all claims that were or could have been brought." (Sealed Conf. Tr. of 5/18/11, Doc. 94 at 6.) Magistrate Judge Litkovitz testified that she reviewed the terms of the settlement with Ms. Byrd and believed that Ms. Byrd understood and consented to terms of the agreement, including a mutual release of all claims. Mr. Donnellon testified that Ms. Byrd made the decision to settle the case and that there was nothing to indicate to him that her decision was anything other than knowing and voluntary. Ms. Byrd did not testify at the Hearing on Defendants' Motion, and she did not otherwise present any evidence to refute the testimony of the Magistrate Judge and Mr. Donnellon that they thought Ms. Byrd understood the terms of the settlement, including the mutual release, and voluntarily entered into it.

However, Defendants have *not* shown that there was any discussion whatsoever at the May 18 settlement conference regarding exactly *whom* was being released from any claims. The evidence shows that Ms. Byrd did not believe that a "mutual release" involved a release of claims against persons who were not employees of Time Warner. At the August status

6

conference, Ms. Byrd asked Mr. Donnellon to modify the language of paragraph 4 of the draft agreement to specify that the release extended only to "direct employees, officers, [and] directors of TWC" and not to "agents, independent contractors, or persons acting in a representative capacity." (2/1/12 Hrg. DX 7.) The fact that Mr. Donnellon did not believe the proposed change was a material alteration to the terms of the release lends weight to the conclusion that there was no discussion at the May 18, 2011 settlement conference that would have caused Ms. Byrd to think that she was agreeing to release any claims she might have had against persons other than Time Warner employees, officers, or directors. Given that all the Defendants in the action are, in fact, Time Warner employees, officers, or directors, it is understandable that Ms. Byrd would have understood that a "mutual release" involved only such persons. In short, Defendants have not shown that there was a meeting of the minds on May 18, 2011 that the mutual release would include claims Ms. Byrd might have had against persons other than Time Warner employees, officers, or directors.

The uncontested evidence shows that the parties agreed on the essential terms of the settlement at the May 18, 2011 conference. The essential, agreed-to terms of that oral agreement were set forth in writing in Defendants' Exhibit 5(A) *except* for paragraph 4 of that document. The evidence further shows that the mutual release language that Ms. Byrd agreed to is that set forth in Defendants' Exhibit 7, which releases Time Warner employees, officers, and directors. Accordingly, the terms of the agreement are those set forth in Defendants' Exhibit 5(A) as modified by substituting the mutual release language of paragraph 4 as shown in Defendants' Exhibit 7.

**B. Reasons for not enforcing an agreement**

Ms. Byrd contends that, even assuming the parties reached an oral settlement agreement, the agreement should be set aside because the attorneys and judge conspired to force her into a settlement. Ms. Byrd claims that the settlement conference was "misleading and fraudulent" (Doc. 91 at 5) and that "counsel and defendant gave false testimony" and that "the judge [did] not ask them to prove the accuracy or truth." (*Id.*) The Court construes Ms. Byrd's argument as an effort to set aside the agreement on the theories that the it was the product of coercion or fraud.

### 1. Coercion

In *Smith v. ABN AMRO Mortgage Group, Inc.*, the plaintiffs claimed that they were subjected to undue pressure from the district judge during a settlement conference because the judge told them they had a better chance of getting a money award in settlement than with a jury. 434 F. App'x at 462. The Sixth Circuit rejected that argument, noting that while a judge may not coerce any party into surrendering the right to have the controversy resolved by the courts, there was no evidence in the case that the judge's statements amounted to coercion. *Id.* (citing Code of Conduct for United States Judges Canon 3A(4) Commentary). Coercion generally "occurs when a judge threatens to penalize a party that refuses to settle." *Id.* (citing *Gevas v. Ghosh*, 566 F.3d 717, 719 (7th Cir. 2009).

There is no evidence whatsoever that Magistrate Judge Litkovitz threatened to penalize Ms. Byrd if she did not settle. As there is no evidence in the record to support a finding that Ms. Byrd was coerced into settlement, Ms. Byrd's first argument for setting aside the agreement fails.

### 2. Fraudulent Inducement

8

Under Ohio law, a contract procured by fraudulent inducement may be rescinded. To prove fraud or fraudulent inducement, a plaintiff must establish "(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance." *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (citing *Lepera v. Fuson*, 83 Ohio App.3d 17, 613 N.E.2d 1060, 1063 (1992)). Fraud must be demonstrated by clear and convincing evidence. *Id.* at 873 (citing *Household Fin. Corp. v. Altenberg*, 5 Ohio St.2d 190, 214 N.E.2d 667, 669-70 (1966)).

Ms. Byrd suggested that Mr. Donnellon falsely told her that the judge would likely grant a defense motion for summary judgment as a way to encourage her to settle her lawsuit. Mr. Donnellon could not testify as to what he told Ms. Byrd regarding summary judgment because Ms. Byrd did not waive her right to attorney-client privilege. However, Mr. Donnellon did testify that he never discussed with the Magistrate Judge whether she had any predisposition whatsoever toward summary judgment. In fact, there was not a summary judgment motion pending at the time of the settlement conference.

Regardless, even if Mr. Donnellon told Ms. Byrd that the Judge might grant an as-yet unfiled summary judgment motion, such a statement would not amount to fraud because, "as a general rule, fraud cannot be predicated upon representations concerning future events because they are more in the nature of predictions or opinions about what the future may hold." *Micrel*, 486 F.3d at 874 (citing *Link v. Leadworks Corp.*, 79 Ohio App. 3d 735, 607 N.E.2d 1140, 1145

9

(1992); *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 149 Ohio App. 3d 513, 778 N.E.2d 80, 89 (2002). Accordingly, Ms. Byrd's second argument for setting aside the settlement agreement also fails.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Enforce Settlement Agreement (Doc. 88) is hereby GRANTED. The oral agreement entered into by the parties on May 18, 2011 is valid and binding. The terms of the agreement are those stated in the Settlement and Release Agreement admitted as Defendants' Exhibit 5(A) to the February 1, 2012 as modified by amended paragraph 4 admitted as Defendants' Exhibit 7.

IT IS SO ORDERED.

___s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court